UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| KAREN STAMP, Plaintiff | ) | C.A. No. 04-0488/L |
| v. | ) | |
| METROPOLITAN LIFE INSURANCE COMPANY OF AMERICA, et al., Defendants | ) | |

**DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT**

Defendants Metropolitan Life Insurance Company ("MetLife"), Administrator-Benefits, Exxon Mobil Benefit Plan, Exxon Mobil Benefit Plan, Exxon Mobil Corporation, Life Insurance Protection Plan of Mobil Oil Corporation, Life Insurance Plan of Mobil Oil (collectively "Mobil") move pursuant to F.R.C.P. 56(b) and on the Affidavits of Thomas F. Presite and Douglas F. Garrison, for summary judgment dismissing plaintiff Karen Stamp's claims in their entirety.

Defendants file herewith a Local Rule 12.1 Statement of Undisputed Facts, supporting memorandum of law and the Affidavits of Thomas F. Presite and Douglas F. Garrison.

Neal McNamara (by BRM)
Neal McNamara, Esq., #4249
Holland & Knight LLP
Attorneys For Defendants Exxon Mobil Corporation, et al.
One Financial Plaza
Providence, RI 02903
(401) 751-8500
(401) 553-6850 [FAX]
neal.mcnamara@hklaw.com

Brooks R. Magratten, Esq., #3585
Catherine A. Shaghalian, Esq. #6883
VETTER & WHITE
Attorneys for Defendant Metropolitan Life Insurance Company
20 Washington Place
Providence, RI 02903
(401) 421-3060
(401) 272-6803 [FAX]
bmagratten@vetterandwhite.com

Dated: January 30, 2006

CERTIFICATE OF SERVICE

TO:

Fred L. Mason, Jr., Esq.
Mason Associates, P.C.
20 Cedar Swamp Road
Smithfield, RI 02917

I hereby certify I caused to be served on the above-named counsel of record a copy of the within Defendants' Joint Motion For Summary Judgment by mailing first class mail, postage prepaid, on the 30th day of January, 2006.

[signature]

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

KAREN STAMP, Plaintiff

v.

METROPOLITAN LIFE INSURANCE COMPANY OF AMERICA, et al., Defendants

C.A. No. 04-0488/L

**MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT**

Defendants Metropolitan Life Insurance Company ("MetLife"), Administrator-Benefits, Exxon Mobil Benefit Plan, Exxon Mobil Benefit Plan, Exxon Mobil Corporation, Life Insurance Protection Plan of Mobil Oil Corporation, Life Insurance Plan of Mobil Oil (collectively "Mobil") move pursuant to F.R.C.P. 56(b) and on the Affidavits of Thomas F. Presite and Douglas F. Garrison for summary judgment dismissing plaintiff's claims in their entirety.

**FACTS**

Mobil sponsors an employee welfare benefit plan (the "Plan") that provides various accidental death and dismemberment ("AD&D") benefits to Mobil employees. Statement of Undisputed Facts ("SUF"), ¶ 1. The Plan offers Basic, Occupational and Voluntary AD&D benefits. Id. at ¶ 2. MetLife issued group policy nos. 33313-G, 23200-G and 27960-G to fund various AD&D benefits under the Plan. Id.

The Plan offers both Basic Life and Basic AD&D coverage. Basic Life is not at issue here because Ms. Stamp received payment on that claim. Id. at ¶ 3. Basic AD&D provides coverage equal to two times a participant's annual salary. This combined Basic Life and AD&D coverage is optional; the participant pays $0.15 per month per $1,000 of coverage over $50,000.

Mobil pays the balance of the premium. Id. Benefits are funded by MetLife group policy 23200-G. Id.

The Plan provides that Basic AD&D benefits will be paid:

> If you are physically injured as a result of an accident and die within 90 days as a result of that injury or accident, your designated beneficiary will receive the full amount of your accidental death and dismemberment benefit as well as your normal benefit under Basic Life Insurance.

The Plan excludes Basic AD&D coverage for death caused by intentional self-destruction or intentionally self-inflicted injury. Id. at ¶ 4.

Voluntary AD&D provides coverage up to eight times a participant's annual salary. Participants must elect this coverage. The cost to the participant is $0.03 for each $1,000 of coverage per month. Voluntary AD&D benefits are funded by MetLife group policy no. 27960-G. According to the Plan, benefits will be paid only if the insured is injured in an accident. The Plan excludes Voluntary AD&D coverage for death or injuries that are the result of intentionally self inflicted injury. Id.

Occupational AD&D provides coverage equal to two times a participant's annual salary, to a maximum of $250,000.00. Coverage is automatic, and is at no cost to the participant. Benefits are funded by MetLife group policy no. 33313-G. Occupational AD&D benefits will be paid if: "You die within one year as a result of an injury caused by an occupational accident 'while at work' . . ." While at work means in relevant part: "Traveling to or from a Mobil function . . . as a representative of management or Mobil." "While at work" also includes time spent on a business trip, "but not personal time taken before, during or following a Mobil-approved business trip." The Plan excludes Occupational AD&D coverage for injuries or death that are the result of intentionally self-inflicted injury. Id. at ¶ 6.

MetLife was at all relevant times a claims fiduciary of the Plan and administered certain claims under the Plan. Mobil also acted as a claim fiduciary and administered certain claims under the Plan as well. Id. at ¶ 7. Mobil, at all relevant times, was the Plan Administrator. As Plan Administrator, Mobil had "full and exclusive authority to make final determinations as to *all* issues concerning plan administration . . ." including "discretionary and final authority to determine coverage and eligibility benefits under the Life Insurance Program . . . and to decide appeals from claim denials." The Plan confers authority on Mobil to determine the amount and kind of information required for a Plan participant to prove that he or she should receive benefits. Pursuant to the Plan, all appeals of benefit denials are submitted to Mobil. Id. at ¶ 8.

Stephen Stamp was an employee of Exxon Mobil Chemical Company (the "Company"), a division of ExxonMobil Corporation. He was, at all relevant times, a participant in the Plan. Mr. Stamp enrolled in Basic, Voluntary and Occupational AD&D coverage under the Plan in May, 2002. He designated his wife, Karen Stamp, as his primary beneficiary. Id. at ¶¶ 9, 10.

According to information in the defendants' respective claim files, on August 2, 2002, a Friday, Mr. Stamp attended a Company meeting, the "Stratford 2002 Exempt Meeting," at Water's Edge Resort in Westbrook, Connecticut. The meeting began in the morning with presentations and was followed by an optional afternoon boat cruise on the Connecticut River and dinner that evening. The dinner was concluded by approximately 7:30 p.m. During the course of the afternoon activity and dinner Mr. Stamp consumed a few alcoholic drinks. Id. at ¶¶ 11.

During the boat cruise, which lasted from 2:15 p.m. to 5:00 p.m., Mr. Stamp indicated to his co-workers that rather than returning to his home in Connecticut after the meeting, he would be driving to and spending the night at his parents' house in Johnston, Rhode Island so that he

could attend his brother's 40th birthday party the following day (Saturday), an event he had planned on attending even before the Stratford 2002 Exempt Meeting had been scheduled. He further stated that his wife and child would be joining him in Rhode Island on Saturday. He also expressed his hope to get together with one of his friends that evening. Id. at ¶ 12.

After the boat cruise, at approximately 5:20 p.m. that day, Mr. Stamp telephoned Ms. Stamp to discuss the day's events. At no time during this conversation did Mr. Stamp sound intoxicated or otherwise impaired. After conversing with Ms. Stamp, Mr. Stamp placed two calls to telephone numbers in Rhode Island. Id. at ¶¶ 13, 14.

At approximately 6:15 p.m., Mr. Stamp attended the dinner, followed by drinks with some of his co-workers at a hotel bar. Mr. Stamp then left the hotel between 8:30 and 9:00 p.m. At the time of his departure, Mr. Stamp did not appear intoxicated or otherwise physically impaired. Id. at ¶¶ 15, 16.

During his drive to Rhode Island, between 8:54 p.m. and 9:55 p.m., Mr. Stamp placed calls on his cellular telephone to four different Rhode Island telephone numbers. One of the phone calls was made at 9:20 p.m. to Joe Kingsley, a friend of Mr. Stamp. During that call, lasting nine minutes, Mr. Stamp stated that he would like to stop by Mr. Kingsley's home and watch a movie Mr. Kingsley had recently purchased. Mr. Kingsley declined, stating that he needed to go to bed because he would have to leave for work at 6:00 a.m. the next morning. At no time during Mr. Stamp's phone call with Mr. Kingsley did Mr. Stamp appear intoxicated or otherwise impaired. Id. at ¶¶ 17, 18, 19. In addition to the call to Mr. Kingsley, three other Rhode Island phone calls were placed by Mr. Stamp to numbers in Centredale, Rhode Island, lasting five, one, and three minutes in duration. Id. at ¶¶ 20, 21.

At 9:51 p.m. and 9:58 p.m., Mr. Stamp placed a one and two minute call respectively through directory assistance. These calls were shown as "roaming" calls in Providence, Rhode Island. Id. at ¶ 22.

According to a Rhode Island Uniform Accident Report, Mr. Stamp was in a one car collision on Route 295 North in Johnston just after midnight on August 3, 2002. State troopers found Mr. Stamp unresponsive in his vehicle at 12:05 a.m. His vehicle was adjacent to a tree and sustained heavy rear and driver's side damage. Id. at ¶ 23.

The police report states that Mr. Stamp was driving in the high speed lane of travel when he lost control of his vehicle. The report states that Mr. Stamp's driver side tires exited the left side of the roadway briefly, causing the vehicle to skid across the second and first lanes of travel. The vehicle exited the right side of the roadway and rotated approximately 180 degrees. The driver side rear end struck a tree. The reporting trooper observed that the road was dry and traffic was light. There were no adverse road conditions. Id. at ¶ 24.

An autopsy revealed that Mr. Stamp died from multiple injuries due to blunt force trauma. The back of his right hand had the word "copy" stamped on it. The autopsy report lists acute ethanol intoxication under "other significant findings." Id. at ¶ 25. A forensic toxicology report indicates that Mr. Stamp's postmortem heart blood alcohol level was 0.265%. Id. at ¶ 26.

The death certificate lists "multiple injuries due to blunt force trauma as the cause of death." It also lists acute ethanol intoxication under "Other significant conditions." In describing how the injury occurred, the death certificate states: "Restrained driver in motor vehicle (car) / fixed object (tree) collision." Id. at ¶ 27.

On August 20, 2002 Ms. Stamp submitted a claim for Basic, Voluntary and Occupational AD&D benefits under the Plan. Id. at ¶ 28. By letter dated September 11, 2002 MetLife

confirmed receipt of Ms. Stamp's claim and requested copies of the police, toxicology and autopsy reports. Id. at ¶ 29.

MetLife processed Ms. Stamp's claims for Basic and Voluntary AD&D benefits only. As part of its administration of these claims, MetLife's Group Claims Division asked the MetLife Medical Department whether "the amount of alcohol [found in Mr. Stamp] could impair someone's ability to drive. . ." On January 9, 2003 MetLife's medical department responded: "Yes, the level shown would cause delirium intoxication. In a sporadic drinker it would cause lethargy, stupor, combativeness, incoherency and vomiting. In a chronic drinker there would be mild emotional changes and motor changes." The Medical Department noted "the level listed in the Toxicology Report is considerably higher than that permitted by the State of Rhode Island." Id. at ¶ 30.

By letter dated March 26, 2003 MetLife denied Ms. Stamp's claim for Basic and Voluntary AD&D benefits based on the self-inflicted injury exclusion in the Plan and because the act of driving while impaired by alcohol rendered the infliction of serious injury or death reasonably foreseeable and not accidental as required under the terms of the Plan. Id. at ¶ 31.

On August 16, 2004, Ms. Stamp submitted her appeal of MetLife's denial to Mobil. Id. at ¶ 32. Mobil reviewed Ms. Stamp's appeal of MetLife's denial of the Basic and Voluntary AD&D benefits. It also reviewed her claim for Occupational AD&D benefits. Id. at ¶ 33.

By letter to Ms. Stamp dated October 14, 2004, Mobil denied Ms. Stamp's appeal of MetLife's denial of the Basic and Voluntary AD&D on the bases that Mr. Stamp's death was not an "accident" within the meaning of the policies and that Mr. Stamp's action of "intentionally consuming an excessive amount of alcohol" fell within the Plan's exclusion of death caused by "intentionally self-inflicted injury." The Voluntary AD&D was additionally denied on the basis

that Mr. Stamp committed a crime by driving while under the influence of alcohol, thereby falling within the Voluntary AD&D's exclusion for death caused by committing a serious crime. Id. at ¶ 35.

In the October 14, 2004 letter, Mobil also denied Ms. Stamp's claim for Occupational AD&D. The decision was based on the conclusion that Mr. Stamp's death was neither an "accident" nor an "occupational accident" within the meaning of the policy. Although the Plan covers any accident which occurs "while at work," defined in part as "[t]raveling to or from . . . a Mobil function . . . as a representative of management of Mobil," Mobil noted that Mr. Stamp was no longer "traveling from" the work-related business meeting in Westbrook "when he stop[ed] . . . for several hours for a separate, purely personal purpose." Mobil added that the phrase "while at work" also includes accidents which occur during a business trip but does not include "personal time taken before, during or following an approved business trip." Mobil stated that even were the Westbrook meeting considered a "business trip," the collision occurred during "personal time taken . . . following" that trip. Finally, Mobil noted that the Occupational AD&D was subject to the same exclusions at the Voluntary AD&D, namely the intentional self-inflicted injury and the serious crime exclusions. Id. at ¶ 36.

On November 23, 2004 Ms. Stamp commenced this action against MetLife and Mobil asserting breach of contract and "fiduciary responsibility" claims related to their denial of Basic, Voluntary and Occupational AD&D benefits. Id. at ¶ 37.

## ARGUMENT

### I. ERISA Preempts Ms. Stamp's State and Common Law Claims

Although Ms. Stamp agrees that ERISA governs this action (see Complaint ¶ 1) she asserts what appear to be state law claims for breach of contract and "breach of fiduciary responsibility" in her complaint. ERISA preempts these claims.

Congress enacted ERISA to regulate completely the field of employee benefit plans. Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359 (1980). ERISA empowers plan participants and beneficiaries to bring civil lawsuits to collect benefits allegedly due under an employee welfare benefit plan. It provides, in part:

> A civil action may be brought -- (1) by a participant or beneficiary -- ... (B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; ....

29 U.S.C. §1132(a)(1)(B). In conjunction with the §1132(a)(1)(B) enforcement provisions, 29 U.S.C. §1144(a), (c), states that ERISA shall supersede "any and all State laws" relating to an employee benefit plan. These provisions establish ERISA as the exclusive avenue for relief for resolution of claims for plan benefits. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987). See also Ingersoll-Rand Co. v. McClendon, 498 U.S. 133 (1990); Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58 (1987).

Plaintiff's remedies under the Plan are limited to those specifically enumerated under §1132. Should this Court find the defendants' claim decisions to have been incorrect, plaintiff's remedy is limited to recovery of AD&D benefits under the Plan.

Courts have routinely held that state law claims for breach of contract are preempted by ERISA where the contract in question is part of an employee welfare benefit plan. See, e.g.,

Tolle v. Carroll Touch, Inc., 977 F.2d 1129 (7th Cir 1992); Boren v. N.L. Industries, Inc., 889 F.2d 1463 (5th Cir. 1989); Morris v. Highmark Life Ins. Co., 255 F. Supp. 2d 16 (D.R.I. 2003); Andrews-Clarke v. Travelers Ins. Co., 984 F. Supp. 49 (D.Mass. 1997). Ms. Stamp's claim for breach of contract is thus preempted.

It is unclear whether Ms. Stamp's claim for "breach of fiduciary responsibility" is a common law breach of fiduciary duty claim or a breach of fiduciary duty claim under 29 U.S.C. § 1132. To the extent that Ms. Stamp asserts a common law breach of fiduciary duty claim, it is preempted. See Nash v. Trustees of Boston Univ., 946 F.2d 960, 964 n. 8 (1st Cir. 1991), citing Pilot Life, supra (ERISA preempts state law claims for breach of fiduciary duties arising from improper processing of a claim under a plan); Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272 (6th Cir.1991) (ERISA preempts breach of good faith); Davidian v. Southern California Meat Cutters Union & Food Employees Benefit Fund, 859 F.2d 134 (9th Cir.1988) (ERISA preempts breach of fiduciary duty).

If Ms. Stamp is pursuing a breach of fiduciary duty claim under 29 U.S.C. § 1132, she cannot prevail as a matter of law. A breach of fiduciary duty claim may only be brought (1) on behalf of the Plan or (2) when equitable relief is sought. Watson v. Deaconess Waltham Hosp., 298 F.3d 102, 109 (1st Cir. 2002). Where adequate relief is available in the form of a claim for benefits, there is no claim for breach of fiduciary duty. Id. It is not an appropriate cause of action for a claimant like Ms. Stamp who seeks Plan benefits. Varity Corp. v. Howe, 516 U.S. 489 (1996).

## II. The Court Must Review Benefit Determinations Under The Arbitrary and Capricious Standard of Review

Where, as here, the Plan grants the administrator or fiduciary the discretionary authority to determine eligibility for benefits or to construe the terms of the Plan, the decision is reviewed

for an abuse of discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989). Because the Plan vests the administrator with discretionary authority, (see SUF, ¶ 8), it has "full and exclusive authority to make final determinations as to *all* issues concerning plan administration . . ." including "discretionary and final authority to determine coverage and eligibility benefits under the Life Insurance Program . . . and to decide appeals from claim denials." Id. The First Circuit has found this language sufficient to warrant deferential review under Firestone. See Brigham v. Sun Life of Canada, 317 F.3d 72 (1st Cir. 2003); Terry v. Bayer Corp., 145 F.3d 28, 37 (1st Cir. 1998).

Even if the Court disagrees with the claims determination, or if the employee offers a competing reasonable explanation, the Court must not disturb a Plan Administrator's determination if it is reasonable. Gannon v. Metropolitan Life Ins. Co., 360 F.3d 211, 212-13 (1st Cir. 2004); Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998); Canis v. Coca Cola Enterprises, Inc., 49 F. Supp. 2d 73, 82 (D.R.I. 1999); Vukic v. Melville Corp., 39 F. Supp. 2d 163, 166 (D.R.I. 1999). The arbitrary and capricious standard is the "least demanding form of judicial review." It requires only that determinations be "rational in light of the plan's provision." Coleman v. Metropolitan Life Ins. Co., 919 F. Supp. 573, 581 (D.R.I. 1996). In other words, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." Id. at 581 (quotation and citation omitted). Reasoned denials of benefits that are supported by substantial evidence will survive review under this standard. Substantial evidence exists where the evidence is reasonably sufficient to support the decision. Doyle, 144 F.3d at 184. To be overturned, a decision must be "not just incorrect but downright unreasonable." Fuller v. CBT Corp., 905 F.2d 1055, 1058 (7th Cir. 1999).

The same standard applies to plan interpretation by the administrator. For example, in Kolling v. American Power Conversion, 347 F.3d 11 (1st Cir. 2003), the Court held that a plan administrator has the discretion to determine the meaning of a term that is not defined by the plan. There, the Court deferred to the plan administrator's interpretation of the undefined term "employee" to limit it to individuals who received W-2 forms. Id. at 14. In interpreting that term, the administrator considered the underlying purposes of the plan. Id. See also Trombetta v. Cragin Fed. Bank for Savings Employee Stock Ownership Plan, 102 F.3d 1435, 1439-40 (7th Cir. 1996)(the administrator "is free to define the terms in its plan however it wishes."). The Plan Administrator's interpretation of both the evidence presented and the meaning of the plan was reasonable, and therefore should not be disturbed.

There is no merit to Ms. Stamp's suggestion that Mobil may have been acting under a personal financial conflict of interest when it denied her claims (see Amended Complaint, ¶ 17) implying that the Court should apply a less deferential standard of review. The First Circuit, however, has yet to find allegations of improper motive sufficient to affect the standard of review, even where the decision maker also funds benefits under the plan. It observed that the mere fact that an individual claim, if paid, would cost the decision maker something does not, by itself, show that the decision was improperly motivated. Wright v. R.R. Donnelley & Sons Co. Group Benefit Plan, 402 F.3d 67, 75 (1st Cir. 2005); Leahy v. Raytheon Co., 315 F.3d 11, 15-17 (1st Cir. 2002); Doe v. Travelers Ins. Co., 167 F.3d 53, 57 (1st Cir. 1999); Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181 (1st Cir. 1998). Here benefits are funded entirely by policies issued by MetLife. SUF, ¶ 2. Mobil had no financial stake in Ms. Stamp's claim. Any argument that Mobil operated under a conflict of interest cannot be sustained.

Plaintiff also claims, at ¶¶ 18-24 of the First Amended Complaint, that the decision of the administrator is somehow tainted because she did not receive information, which she fails to identify, that she requested during the administrative process. 29 C.F.R. §2560.503-1(b)(1)(iii) provides that an ERISA plan must not contain any provision and not be administered in a way that "unduly inhibits or hampers the initiation or processing of plan claims." As a threshold matter, the defendants are unaware of any way in which the processing of the instant claim was hampered. Courts have held that the above regulation was violated where 1) the plan failed to provide an adequate claim procedure by not providing claimant the opportunity to obtain the forms needed to initiate her health care claim, Arsenault v. Bell, 724 F. Supp. 1064, 1067 (D. Mass. 1989), 2) the plan administrator failed to set forth all the reasons for denial of the claim, Bruce v. K-Mart Corp., 568 F. Supp. 378, 383-84 (W.D. Ark. 1983), and 3) the plan failed to provide review procedures satisfying due process requirements, Grossmuller v. Budd Company Retirement Benefit Plan, 547 F. Supp. 111, 115 (E.D. Pa. 1982). None of those situations is present here.

Moreover, it is not the burden of the administrator to prove that it reasonably processed a claim. See, e.g., Vega v. National Life Ins. Servs., Inc., 188 F.3d 287 (5th Cir. 1999) (en banc). In Vega, the Fifth Circuit rejected a panel decision which held that in reviewing a claim for benefits a district court should determine whether a plan administrator has conducted a good faith, reasonable investigation. The court recognized that adopting such a rule would, in effect, "shift the burden to the administrator to prove that it reasonably investigated the claim." Id. at 298. "A rule that permitted such a result would be at odds with the Supreme Court's instruction in Bruch to review such determinations under an abuse of discretion standard--a standard that demands some deference be given to the administrator's decision." Id. The Fifth Circuit

concluded that the focus of judicial review should be "whether the record adequately supports the administrator's decision." Id.

The First Circuit has similarly instructed that there is a "strong presumption" that judicial review should be limited to the evidentiary record before the administrator. See Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 519 (1st Cir. 2005); Lopes v. Metropolitan Life Ins. Co., 332 F.3d 1 (1st Cir. 2003); Liston v. UNUM Corp. Officer Severance Plan, 330 F.3d 19, 23 (1st Cir. 2003). There is no compelling reason why the Court should delve into an assessment of what additional information defendants could have or should have provided to plaintiff during the administrative process. In any event, the evidence demonstrates the administrator's review of the facts was complete and thorough, and that plaintiff had every opportunity to review all relevant information herself and to submit information.

### III. ERISA Plan Language Must Be Applied Strictly.

ERISA Plan language must be applied strictly, and trumps any equitable considerations. For example, in Harris v. Harvard Pilgrim Healthcare, Inc., 208 F.3d 274 (1st Cir. 2000), plaintiffs recovered a settlement based on injuries arising from a motorcycle accident. Harvard Pilgrim filed a state law lien against any award. The ERISA plan unambiguously required its members to reimburse the Plan for all benefits paid. Plaintiffs argued that the lien should be reduced 1) because the settlement did not compensate them for all damages, and 2) pursuant to the equitable common-fund doctrine so Harvard Pilgrim would bear its pro rata share of the attorneys' fees incurred. The Court refused to reduce the lien, even though the Plan was compensated by a third-party settlement without incurring any attorneys' fees, because the terms of the Plan were unambiguous. Similarly, in Alves v. Harvard Pilgrim Healthcare, Inc., 204 F. Supp. 2d 198 (D. Mass. 2002), the Court noted "the First Circuit's insistence on strict

interpretation of ERISA plan documents, even when such an approach is inequitable with respect to particular plaintiffs." Id. at 208. Burnham v. Guardian Life Ins. Co., 873 F.2d 486, 489-90 (1st Cir. 1989) ("Any time coverage is less than universal, line-drawing becomes a necessary evil."). Thus, plaintiff may recover only if Mr. Stamp's death was the result of an accident, as defined in the Plan or interpreted by the Plan Administrator, and if no plan exclusion applies. As that is not the case, plaintiff may not recover.

## IV. Mobil's and MetLife's Decisions To Deny AD&D Benefits Are Supported By Substantial Evidence and Not Arbitrary or Capricious

Mobil's and MetLife's decisions to deny AD&D benefits were reasonable and rational, and supported by substantial evidence: death resulting from driving while grossly intoxicated cannot be deemed an accident as a matter of law. The Plan provides that Basic, Voluntary and Occupational AD&D benefits will be paid if the Plan participant is physically injured as a result of an accident and dies as a result of that injury or accident. SUF, ¶¶ 4-6. Moreover, the Plan Administrator reasonably found that the purpose of the Plan was not to benefit people who intentionally and unreasonably increase their risk of injury. SUF, ¶¶ 35, 36. Nor can plaintiff demonstrate that defendants' determinations were arbitrary or capricious.

Although the Plan does not define "accident,"[1] the First Circuit has established a "subjective/objective" test to be used in determining what constitutes an accidental death within the meaning of an AD&D policy. Wickman v. Northwestern Nat'l Ins. Co., 908 F.2d 1077, 1084 (1st Cir.), cert. denied, 498 U.S. 1013 (1990). First, the reasonable expectations of the insured must be considered. Id. at 1088. If the insured did not expect an injury similar to that suffered, the fact-finder must then ask whether the insured's expectation was reasonable. Id. If the fact-finder cannot determine the insured's subjective expectation, the fact-finder must the ask

[1] As referenced above, a plan administrator is afforded broad discretion in interpreting the meaning of undefined terms, such as "accident" here. Kolling v. American Power Conversion, 347 F.3d at 14.

"whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct." Id.

This Court has determined that death associated with driving while intoxicated is not an accident under the Wickman test. Mullaney v. Aetna U.S. Healthcare, 103 F. Supp. 2d 486 (D.R.I. 2000). In that case, Mr. Mullaney was determined to have been driving in excess of the posted speed limit when his vehicle crossed the road, left the pavement, and collided with a tree shortly after midnight. Mr. Mullaney was pronounced dead on the scene. His autopsy report noted acute ethanol intoxication. He had a blood alcohol level of .370% at the time of his death. Aetna denied benefits, finding that Mr. Mullaney's death was not accidental within the meaning of its AD&D policy. Id. at 489.

Reviewing that decision de novo, this Court agreed with Aetna's conclusion. The Court held that Mr. Mullaney's death was not an accident under Wickman because: "Even if it be assumed that Mr. Mullaney himself may not have intended or foreseen any harm in attempting to drive while grossly intoxicated, a reasonable person would have known that such conduct would likely result in serious bodily harm." Id. at 494.

Similarly, Mr. Stamp's death cannot be deemed to have been caused by an accident under Wickman. Mr. Stamp was found unresponsive in his vehicle just after midnight. A forensic toxicology report shows that Mr. Stamp's blood alcohol level at the time of his death was .265%—more than three times the Rhode Island legal limit of .08%. SUF, ¶ 26. See R.I.G.L. § 31-27-2. The autopsy report and death certificate note Mr. Stamp's "acute ethanol intoxication." Id. at ¶¶ 25, 27. His hand was stamped with the word "copy" on it, suggesting that he stopped at another bar or nightclub on his way to Johnston, Rhode Island. Id. at ¶ 25.

The evidence leads only to one conclusion—that Mr. Stamp's gross intoxication caused him to lose control of his vehicle, skid across two lanes of travel, exit the roadway and strike a tree. Mr. Stamp knew or should have known that serious bodily injury or death was substantially likely to occur as a result of his volitional act of driving while grossly intoxicated. Even if Mr. Stamp may not have intended or foreseen any harm in attempting to drive under the influence of alcohol, a reasonable person in Mr. Stamp's position would have known that such conduct would likely result in serious bodily harm.

Plaintiff argued in her administrative appeal that because neither MetLife nor Mobil knows whether Mr. Stamp's intoxication in fact caused him to lose control of his vehicle, his death cannot be deemed accidental. It is not, however, MetLife's or Mobil's burden to prove that Mr. Stamp's death was not accidental. The burden remains on Ms. Stamp to prove it was accidental. The Plan confers authority on Mobil to decide appeals from claim denials and to determine the amount and kind of information required for a Plan participant to prove that he or she should receive benefits. SUF, ¶ 8. Under federal common law of ERISA, the burden of proving that death was a result of accidental injuries rests upon Ms. Stamp. See Danz v. Life Ins. Co. of North America, 215 F. Supp. 2d 645, 650 (D. Md. 2002); Vukic v. Melville Corp., 39 F. Supp. 2d 163, 168 (D.R.I. 1999)(disability claimant bore burden of proving claim for plan benefits). This burden she has not carried and she cannot do so.

The administrative record is bereft of evidence indicating that Mr. Stamp's death was accidental. Ms. Stamp speculates that her husband may have lost control of his vehicle while trying to avoid a collision with another vehicle or an animal. She suggests that he may have fallen asleep at the wheel. See Garrison Affidavit, Exhibit B, pp. 65. There is nothing in the administrative record to support any of these theories. There is indisputable evidence, however,

that Mr. Stamp's blood alcohol level was over three times the Rhode Island legal limit. SUF, ¶ 26. He had the word "copy" stamped on his hand. SUF, ¶ 25. Co-workers observed Mr. Stamp drinking throughout the afternoon and evening of August 2, 2002. SUF, ¶¶ 11, 15. He was last seen leaving a hotel bar in Connecticut. SUF, ¶ 16. There is no evidence of any other damaged vehicle or injured animal or pedestrian at the scene to explain why Mr. Stamp lost control of his vehicle. There were no adverse weather or road conditions. These facts create a more than reasonable inference that Mr. Stamp's intoxication caused the collision (and if he fell asleep, that may very well have been the result of acute intoxication).

Moreover, a majority of federal courts have concluded that death or serious injury involving intoxicated driving cannot be characterized as "accidental" for the purposes of an AD&D policy, even where the precise mechanism of death is unknown:

- [G]iven the amount of alcohol ingested here [BAC .252%] and the exclusion of any other cause for the accident, we cannot say that it was arbitrary and capricious for MetLife to determine that this particular vehicular death was no 'accident'. Cozzie v. Metropolitan Life Ins. Co., 140 F.3d 1104, 1111 (7th Cir. 1998)

- It is neither unreasonable nor irrational . . . for Metropolitan to conclude the act of driving while [intoxicated at BAC 00.18] rendered the infliction of serous (sic.) injury or death reasonably foreseeable and, hence, not accidental as contemplated by the Plan. Cates v. Metropolitan Life Ins. Co., 14 F. Supp. 2d 1024, 1027 (E.D. Tenn. 1996), aff'd, 149 F.3d 1182 (6th Cir. 1998). (internal quotations omitted).

- A toxicology report reflected that [decedent]'s blood alcohol content was .212% . . . There is only one reasonable conclusion that can be reached: [decedent] was highly intoxicated at the time of his death . . . As a matter of common sense and reasonableness there can be no question that but for [decedent]'s intoxication, the wreck might well not have happened. Because [decedent]'s actions clearly fail the Wickman test, his death cannot be

considered 'accidental.' Poeppel v. The Hartford Life Ins. Co., 273 F. Supp. 2d 714, 720 (D.S.C. 2003).

- To the extent that plaintiff asserts that . . . intoxication was not a cause of the accident, the court notes that there is no evidence in the record to suggest that there was any other cause of the accident. Given the well-documented and well-known effects of intoxication on a person's ability to operate a motor vehicle, and given the absence of evidence of any other cause of the accident, there is no conflicting evidence which would require a trial on the issue. Sorrells v. Sun Life Assur. Co. of Canada, 85 F. Supp. 2d 1221, 1233-34 (S.D.Ala. 2000)

- The hazards of driving while intoxicated are well-known. The public is reminded daily of the risks of driving while intoxicated both in warnings from the media and in motor vehicle and criminal laws. A reasonable person with the decedent's background and experience would have known that injury was highly likely to occur as a result of decedent's intentional conduct in driving while intoxicated. Walker v. Metropolitan Life Ins. Co., 24 F. Supp. 2d 775, 781 (E.D. Mich., 1997).

- While the [decedent] did not intend to die, his expectations were unreasonable given his condition. It is just common sense that a driver whose faculties are significantly impaired by alcohol or drugs, or both, risks his life as well as others. The case law is replete with situations in which an insured unwisely and unsuccessfully tempted fate. Denial of benefits is appropriate in such circumstances. Schultz v. Metropolitan Life Ins. Co., 994 F. Supp. 1419, 1421 (M.D. Fla. 1998).

- The death certificate reported that the spinal fracture was due to a motor accident, which itself was due to alcohol intoxication. As a matter of common sense and reasonableness, there can be no question that but for the intoxication, the mishap might well not have happened. Nelson v. Sun Life Assurance Co. of Canada, 962 F. Supp. 1010, 1012 (W.D. Mich. 1997).

- [T]he hazards of drinking and driving are widely known and widely publicized. It is clearly foreseeable that driving while intoxicated may result in death or bodily harm.

Fowler v. Metropolitan Life Ins. Co., 938 F. Supp. 476, 480 (W.D. Tenn. 1996).

- [The decedent] knew or should have known that serious bodily injury or death was a probable consequence substantially likely to occur as a result of the use of cocaine. McLain v. Metropolitan Life Ins. Co., 820 F. Supp. 169, 178 (D.N.J. 1993).

Cozzie is directly on point. The insured was killed when his car missed a curve in the road, struck an embankment and rolled over three times. He had a blood alcohol level of .252%. There were no witnesses to the accident and "no apparent cause of the accident other than Mr. Cozzie's impaired condition." Id. at 1106. MetLife denied benefits on the grounds that his death was not an accident. Id. The Seventh Circuit agreed with MetLife's interpretation, finding that it did not contradict the plain wording of the Plan and that it was supported by judicial decisions. Id. at 1109-10.

Similarly, in Sorrells, the insured drove off the road and back on again, overturned and crossed into the oncoming lane before coming to a rest on the left shoulder. No adverse conditions were reported. The insured had a blood alcohol level of .23% at the time of his death. There were no other vehicles involved and no witnesses to the accident. The court concluded that even under de novo review, the insured's operation of a motor vehicle while voluntarily intoxicated was not an accident as defined in the AD&D policy because there was no evidence suggesting any other cause. Sorrells, 85 F. Supp. 2d at 1233-34, 1236.

In her appeal to Mobil, Ms. Stamp relied on two decisions in the Eighth Circuit holding that it is unreasonable to deny AD&D benefits on the ground that death associated with driving while intoxicated is not accidental. King v. Hartford Life and Accident Ins. Co., 357 F.3d 840 (8th Cir. 2004); West v. Aetna Life Ins. Co., 171 F. Supp. 2d 856 (N.D. Iowa 2001). The Eighth Circuit has since vacated King and, after rehearing en banc, remanded the case back to the plan

administrator for reevaluation. King v. Hartford Life and Accident Ins. Co., 414 F.3d 994 (8th Cir. 2005).

In West, the insured was driving home from his employer's Christmas party when he missed a curve in the road and struck a tree. His blood alcohol level was .203%. The autopsy report noted the insured's ethanol intoxication as a significant contributing factor. Aetna denied AD&D benefits on the ground that the insured's death was not an accident.

The court concluded that Aetna's decision was unreasonable despite numerous decisions finding that the death of an intoxicated driver cannot be deemed an accident, including Mullaney. West, 171 F. Supp. 2d at 905. While acknowledging that those decisions are "decisive and consistent," it concluded that they all misapplied Wickman. Not only does West represent the minority view on this issue, the Eastern District of Arkansas noted that West's precedential value has been called into doubt in light of the Eighth Circuit's vacation of King. McElyea v. AIG Life Ins. Co., 326 F. Supp. 2d 960, 967 (E.D. Ark. 2004).

Therefore, the determination of the defendants was supported by substantial evidence, and was neither arbitrary or capricious. There is nothing "downright unreasonable," or even incorrect about Mobil's and MetLife's denial of AD&D benefits. The hazards of drinking and driving are widely known and widely publicized. It is foreseeable that driving while intoxicated may result in a crash that causes death or bodily harm. The denial is consistent with the case law that holds that death or injury resulting from driving while intoxicated cannot be deemed an accident under any standard of review. Mr. Stamp's volitional act of driving while intoxicated removed his death from the realm of chance or unknown or remote causes. Mullaney, at 491.

**V. Defendants' Decision To Deny Basic and Voluntary AD&D Benefits Was Similarly Supported By Substantial Evidence, and Not Arbitrary or Capricious, Because The Self-Inflicted Injury Exclusion Applies**

The decision to deny Ms. Stamp's claim for AD&D and Voluntary AD&D claims was similarly supported by substantial evidence, and neither arbitrary nor capricious, because those claims are precluded by the self-inflicted injury exclusion in the Plan. The Plan expressly states that no AD&D payment will be made for death caused by intentional self destruction or intentionally self-inflicted injury. SUF at ¶¶ 4-6.

Mr. Stamp's excessive and voluntary consumption of alcohol rendered his injury "intentionally self-inflicted" within the meaning of the Plan. In Nelson, supra, the insured was trying to pass another vehicle when he lost control and rolled over the median. His blood alcohol level was .018% at the time. The court found the insured's death to be self-inflicted: "There can be no dispute that the voluntary consumption of alcohol, in conjunction with the high blood content, would seriously impair [the insured]'s judgment and ability to control his vehicle." Nelson at 1013. The insured "inflicted an 'injury of a chemical nature, depressing the bodily functions.'" Id., quoting Holsinger v. New England Mutual Life Ins. Co., 765 F. Supp. 1279 (E.D. Mich. 1991). The mental and physical deficits (reduced awareness, blurred vision, sleepiness, lack of motor control, loss of judgment) caused by voluntarily consuming enough alcohol to raise the BAC to .265 were purposely self-inflicted injuries that resulted in Mr. Stamp's death. Given Mr. Stamp's level of intoxication, it was eminently reasonable for MetLife and Mobil to conclude that Mr. Stamp's death was caused or contributed to by an intentionally self-inflicted injury. Cozzie, 140 F.3d at 1111; Mullaney at 495; Nelson, 962 F. Supp. at 1013.

### VI. Defendants' Decision To Deny Occupational AD&D Benefits Was Supported By Substantial Evidence, And Was Neither Arbitrary Nor Capricious, Because The Claim Is Subject To The Self-Inflicted Injury Exclusion And Mr. Stamp's Death Did Not Occur 'While At Work.'

Like her claim for Basic and Voluntary AD&D benefits, the denial of Ms. Stamp's claim for Occupational AD&D benefits was supported by substantial evidence, and not arbitrary or capricious, because Mr. Stamp's death was not accidental and because the self-inflicted injury exclusion applies for the reasons set forth in Sections IV and V, above. In addition, Occupational AD&D benefits are not available to Ms. Stamp because Mr. Stamp's death did not occur "while at work," a prerequisite to recovery of such benefits.

The Plan defines "while at work," in part, to include an accident that occurs while "traveling to or from ... a Mobil function ... as a representative of management of Mobil." The administrator reasonably concluded that "a participant is clearly no longer 'traveling from' such a function when he stops for several hours for a separate, purely personal purpose." SUF, ¶ 36. The definition of "while at work" also includes time spent on a business trip, but not personal time taken before, during or following an approved business trip. The administrator reasonably concluded that, if the travel to Westbrook were viewed as a "business trip," "the collision occurred during 'personal time taken ... following' the approved business trip, and thus not 'while at work.'" Id.

Defendants have not been able to locate any ERISA decisions regarding Plan language similar to the language at issue here. Nevertheless, it is well settled that an employee is not acting within the course of his employment if he is engaged in a purely personal pursuit. Restatement (Second) of Agency § 235. Moreover, conduct of an employee is characterized as personal and, thus, not within the scope of employment if it is different in kind from that

authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve his employer. Id. at § 228. Applying those general principals to the facts here, in conjunction with the "arbitrary and capricious" standard of review and the requirement that the language of ERISA plans be applied strictly, leads inexorably to the conclusion that the decision of the administrator here should be upheld.

The accident resulting in Mr. Stamp's death occurred while Mr. Stamp was pursuing his own personal interests. Mr. Stamp was not injured simply returning from a work-related function. Rather than driving to his home in Connecticut (the same state in which the Mobil function was held), Mr. Stamp chose to travel to an entirely different state (Rhode Island) for the purpose of attending a family gathering. Mr. Stamp also intended to socialize with a friend or friends in Rhode Island while en route to his destination. This is evidenced by his numerous calls to Rhode Island phone numbers, his expressed intent to get together with a friend in Rhode Island, and his request of Mr. Kingsley to stop by Mr. Kingsley's home to view a movie. SUF ¶¶ 17, 18, 20-22. That Mr. Stamp most likely did stop somewhere to socialize is evidenced by the lapse of time between his departure from Westbrook and the accident and his severe intoxication at the time of the accident, a condition he was not in when he left Westbrook several hours earlier. Mr. Stamp's multi-hour journey to another state for the purpose of seeing his friends and family, combined with the likely stop along the way for ingestion of alcohol was not authorized, required, or even reasonably connected to travel from the Mobil function earlier that day. Indeed, Mr. Stamp had already planned on traveling to Rhode Island prior to the scheduling of the Westbrook meeting; thus, he would have traveled there irrespective of the meeting. Garrison Aff., Exhibit B p. 40. Given this set of circumstances, it is clear that Mr. Stamp was not on a business trip or "traveling" from the Mobil function at the time of the accident, but that

he was engaged in a purely personal pursuit. Accordingly, Mr. Stamp's death did not occur "while at work," and Mobil's decision should be upheld.

### VII. There Being No Dispute As To Any Material Fact, Summary Judgment Should Enter Dismissing Plaintiff's Claims

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a motion for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment is only available when there is no dispute as to any material fact and only questions of law remain. United States ex. rel. D'Ambra Constr. Co., Inc., 24 F. Supp. 2d 218 (D.R.I. 1998). In determining whether summary judgment is appropriate, the court must view the facts on the record and all inferences therefrom in the light most favorable to the non-moving party. Continental Casualty Co. v. Canadian Universal Ins. Co., 924 F.2d 370 (1st Cir. 1991), citing Garside v. Osco Drug, Inc., 895 F.2d 46 (1st Cir. 1990).

The only material facts in this case are contained in the Mobil and MetLife claim files. Orndorf, 404 F.3d at 519. The Rhode Island State Police records, autopsy and toxicology reports contained in those files, along with the Plan documents, provide an indisputable factual foundation for Mobil's and MetLife's denial of AD&D benefits. Ms. Stamp does not and cannot dispute the fact that her husband was grossly intoxicated while driving in the evening of August 2, 2003. Nor can she dispute the lack of any evidence suggesting that Mr. Stamp's death was caused by an accident. Because Mr. Stamp's death was the result of drunk driving and cannot, therefore, be deemed an accident, the decision by MetLife and Mobil to deny AD&D benefits is reasonable as a matter of law.

**VIII. Plaintiff Is Not Entitled To A Jury Trial**

In the event that the Court denies this motion in whole or in part, the jury demand in Ms. Stamp's complaint must be stricken. Proceedings to determine rights under employee benefit plans governed by ERISA are equitable in character and thus a matter for a judge, not a jury. See, e.g., Recupero v. New England Tel. & Tel. Co., 118 F.3d 820, 831-32 (1st Cir. 1997); Sullivan v. LTV Aerospace & Def. Co., 82 F.3d 1251, 1258 (2d. Cir.1996); Borst v. Chevron Corp., 36 F.3d 1308, 1323-24 (5th Cir.1994) ; Spinelli v. Gaughan, 12 F.3d 853 (9th Cir. 1993); Biggers v. Wittek Industries, Inc., 4 F.3d 291 (4th Cir. 1993); Blake v. Unionmutual Stock Life Ins. Co., 906 F.2d 1525 (11th Cir. 1990); Cox v. Keystone Carbon Co., 894 F.2d 647 (3rd Cir.), cert. denied, 498 U.S. 811 (1990); Daniel v. Eaton Corp., 839 F.2d 263 (6th Cir.), cert. denied, 488 U.S. 826 (1988); In Re Vorpahl, 695 F.2d 318 (8th Cir. 1982).

District Courts in this Circuit have held routinely that jury trials are not available in ERISA cases: Dudley Supermarket v. TransAmerica Life Ins. & Ann. Co., 188 F. Supp. 2d 23, 24 (D. Mass 2002); Canis v. Coca-Cola Enterprises, Inc., 49 F. Supp. 2d 73, 80 n.3 (D.R.I. 1999); Gentile v. John Hancock Mut. Life Ins. Co., 951 F. Supp. 284 (D.Mass.1997); Charlton Memorial Hosp. v. Foxboro Co., 818 F. Supp. 456, (D.Mass. 1993); Kelly v. Blue Cross & Blue Shield of Rhode Island, 814 F. Supp. 220, 222 (D.R.I. 1993). Ms. Stamp therefore is not entitled to a jury trial.

**IX. CONCLUSION**

For these reasons, summary judgment should enter for Defendants Metropolitan Life Insurance Company, Administrator-Benefits, Exxon Mobil Benefit Plan, Exxon Mobil Benefit Plan, Exxon Mobil Corporation, Life Insurance Protection Plan of Mobil Oil Corporation and

Life Insurance Plan of Mobil Oil dismissing plaintiff's claims. In the event same or all of plaintiff's claims survive, plaintiff is not entitled to trial by jury.

Neal McNamara (by BRM)
Neal McNamara, Esq., #4249
Holland & Knight LLP
Attorneys For Defendant Exxon
Mobil Corporation, et al.
One Financial Plaza
Providence, RI 02903
(401) 751-8500
(401) 553-6850 [FAX]
neal.mcnamara@hklaw.com

Brooks R. Magratten, Esq., #3585
Catherine A. Shaghalian, Esq. #6883
VETTER & WHITE
Attorneys for Defendant Metropolitan
Life Insurance Company
20 Washington Place
Providence, RI 02903
(401) 421-3060
(401) 272-6803 [FAX]
bmagratten@vetterandwhite.com

Dated: January 30, 2006

**CERTIFICATE OF SERVICE**

TO:

Fred L. Mason, Jr., Esq.
Mason Associates, P.C.
20 Cedar Swamp Road
Smithfield, RI 02917

I hereby certify I caused to be served on the above-named counsel of record a copy of the within Memorandum In Support of Defendants' Joint Motion For Summary Judgment by mailing first class mail, postage prepaid, on the 30th day of January, 2006.