UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| KAREN STAMP, | ) | |
| Plaintiff | ) | C.A. No. 04-0488/L |
| | ) | |
| v. | ) | |
| | ) | |
| METROPOLITAN LIFE | ) | |
| INSURANCE COMPANY OF | ) | |
| AMERICA, et al., | ) | |
| Defendants | ) | |

**JOINT RULE 12. 1 STATEMENT OF UNDISPUTED FACTS**

Pursuant to Local Rule 12.1 and in further support of their Joint Motion for Summary Judgment defendants Metropolitan Life Insurance Company ("MetLife"), Administrator-Benefits, Exxon Mobil Benefit Plan, Exxon Mobil Benefit Plan, Exxon Mobil Corporation, Life Insurance Protection Plan of Mobil Oil Corporation, Life Insurance Plan of Mobil Oil (collectively "Mobil") submit the following Statement of Undisputed Facts:

1. Mobil sponsors an employee welfare benefit plan (the "Plan") that provides various accidental death and dismemberment ("AD&D") benefits to Mobil employees. Douglas F. Garrison Affidavit ("Garrison Aff."), ¶ 2, Exhibit A thereto.

2. The Plan offers Basic, Occupational and Voluntary AD&D benefits. MetLife issued group policy nos. 33313-G, 23200-G and 27960-G to fund various AD&D benefits under the Plan. Thomas F. Presite Affidavit ("Presite Aff."), ¶ 2. Exhibits A, B and C thereto.

**Basic AD&D Coverage**

3. The Plan offers both Basic Life and Basic AD&D coverage. Basic Life is not at issue here because Ms. Stamp received payment on that claim. Basic AD&D provides coverage equal to two times a participant's annual salary. The coverage is optional. For the combined

Basic Life and AD&D coverage, the participant pays $0.15 per month per $1,000 of coverage over $50,000. Mobil pays the balance of the premium. Benefits are funded by MetLife group policy 23200-G. Garrison Aff. ¶ 4.

4. The Plan provides that Basic AD&D benefits will be paid:

> If you are physically injured as a result of an accident and die within 90 days as a result of that injury or accident, your designated beneficiary will receive the full amount of your accidental death and dismemberment benefit as well as your normal benefit under Basic Life Insurance.

Garrison Aff. ¶ 3, Exhibit A, p. 50. The Plan excludes Basic AD&D coverage for death caused by intentional self destruction or intentionally self-inflicted injury. Id. p. 50A.

**Voluntary AD&D**

5. Voluntary AD&D provides coverage up to eight times a participant's annual salary. Participants must elect coverage. The cost to the participant is $0.03 for each $1,000 of coverage per month. Benefits are funded by MetLife group policy no. 27960-G. Garrison Aff., ¶ 5, Exhibit B. Benefits will be paid only if the insured is injured in an accident. The Plan excludes Voluntary AD&D coverage for death or injuries that are the result of intentionally self inflicted injury. Garrison Aff. ¶ 5; Presite Aff. ¶ 4, Exhibit B, p. 73.

**Occupational AD&D**

6. Occupational AD&D provides coverage equal to two times a participant's annual salary, to a maximum of $250,000.00. Coverage is automatic, and is at no cost to the participant. Benefits are funded by MetLife group policy no. 33313-G. Garrison Aff. ¶ 6. Occupational AD&D benefits will be paid if: "You die within one year as a result of an injury caused by an occupational accident 'while at work' . . ." 'While at work' is defined, in part, as an accident occurring "at the work place before, during, or after normal working hours or on the weekend

while performing work for the Company." It is also defined as: "Traveling to or from a Mobil function . . . as a representative of management or Mobil." "While at work" also includes time spent on a business trip, "but not personal time taken before, during or following a Mobil-approved business trip." The Plan excludes Occupational AD&D coverage for injuries or death that are the result of intentionally self-inflicted injury. Presite Aff., Exhibit C p. 104, 109.

**MetLife and Mobil**

7. MetLife was at all relevant times a claims fiduciary of the Plan and administered certain claims under the Plan. Mobil also acted as a claims fiduciary and administered certain claims under the Plan as well. Garrison Aff. ¶ 7; Presite Aff., ¶ 6.

8. Mobil, at all relevant times, was the Plan Administrator. Garrison Aff., ¶ 4. As Plan Administrator, it had "full and exclusive authority to make final determinations as to *all* issues concerning plan administration . . ." including "discretionary and final authority to determine coverage and eligibility benefits under the Life Insurance Program . . . and to decide appeals from claim denials." Garrison Aff. ¶ 7; Presite Aff., Exhibit D, p. 74. The Plan confers authority on Mobil to determine the amount and kind of information required for a Plan participant to prove that he or she should receive benefits. Garrison Aff. ¶ 7; Presite Aff., Exhibit D, p. 74. Pursuant to the Plan, all appeals of benefit denials are submitted to Mobil. Garrison Aff. ¶ 7; Presite Aff., Exhibit D, p. 17.

**Stephen Stamp**

9. Stephen Stamp was an employee of Exxon Mobil Chemical Company (the "Company"), a division of Mobil. He was, at all relevant times, a participant in the Plan. Garrison Aff. ¶ 8; Presite Aff., ¶ 7, Exhibit D, pp.151-152.

10. Mr. Stamp enrolled in Basic, Voluntary and Occupational AD&D coverage under the Plan in May, 2002. He designated Karen Stamp as his primary beneficiary. Garrison Aff. ¶ 9; Presite Aff. ¶ 8 Exhibit D, pp. 154-56.

11. On August 2, 2002, a Friday, Mr. Stamp attended a Company meeting, the "Stratford 2002 Exempt Meeting," at Water's Edge Resort in Westbrook, Connecticut. The meeting began in the morning with presentations and was followed by an optional afternoon boat cruise on the Connecticut River and dinner that evening. The dinner was concluded by approximately 7:30 p.m. During the course of the afternoon activity and dinner Mr. Stamp consumed a few alcoholic drinks. Garrison Aff., at Exhibits C and D.

12. During the boat cruise, which lasted from 2:15 p.m. to 5:00 p.m., Mr. Stamp indicated to his co-workers that rather than returning to his home after the meeting, he would be driving to and spending the night at his parents' house in Johnston, Rhode Island so that he could attend his brother's 40th birthday party the following day (Saturday), an event he had planned on attending even before the Stratford 2002 Exempt Meeting had been scheduled. He further stated that his wife and child would be joining him in Rhode Island on Saturday. He also expressed his hope to get together with one of his friends that evening. Id. at Exhibits D and E.

13. After the boat cruise, at approximately 5:20 p.m. that day, Mr. Stamp telephoned his wife, Karen Stamp to discuss the day's events. At no time during this conversation did Mr. Stamp sound intoxicated or otherwise impaired. Id. at Exhibits E and G.

14. After conversing with Ms. Stamp, Mr. Stamp placed two calls to telephone numbers in Rhode Island. Id. at Exhibit G.

15. At approximately 6:15 p.m., Mr. Stamp attended the dinner, followed by drinks with some of his co-workers at a hotel bar. Id. at Exhibit D.

16. Mr. Stamp left the hotel between 8:30 and 9:00 p.m. At the time of his departure, Mr. Stamp did not appear intoxicated or otherwise physically impaired. Id.

17. During his drive to Rhode Island, between 8:54 p.m. and 9:33 p.m., Mr. Stamp placed calls on his cellular telephone to four different Rhode Island telephone numbers. Id. at Exhibit G.

18. One of the phone calls was made at 9:20 p.m. to Joe Kingsley, a friend of Mr. Stamp. During that call, lasting 9 minutes, Mr. Stamp stated that he would like to stop by Mr. Kingsley's home and watch a movie Mr. Kingsley had recently purchased. Mr. Kingsley declined, stating that he needed to go to bed because he would have to leave for work at 6:00 a.m. the next morning. Id. at Exhibits G and H.

19. During the 9:20 p.m. phone call to Mr. Kingsley, Mr. Stamp did not appear intoxicated or otherwise impaired. Id. at Exhibit H.

20. The two other Rhode Island phone calls were placed to numbers in Centredale, Rhode Island, one call lasting five minutes and the other one minute. Id. at Exhibit G.

21. At 9:55 p.m., Mr. Stamp placed a three minute phone call to a number listed in Centredale, Rhode Island. Id.

22. At 9:51 p.m. and 9:58 p.m., Mr. Stamp placed a one and two minute call respectively through directory assistance. These calls were shown as "roaming" calls in Providence, Rhode Island. Id.

23. According to a Rhode Island Uniform Accident Report, Mr. Stamp was in a one car accident on Route 295 North in Johnston just after midnight on August 3, 2002. State troopers found Mr. Stamp unresponsive in his vehicle at 12:05 a.m. His vehicle was adjacent to

a tree and sustained heavy rear and driver's side damage. Presite Aff., ¶ 9, Exhibit D, pp. 144-47.

24. The police report states that Mr. Stamp had been driving in the high speed lane when he lost control of his vehicle. The report states that Mr. Stamp's driver side tires exited the left side of the roadway briefly, causing the vehicle to skid across the second and first lanes of travel. The vehicle exited the right side of the roadway and rotated approximately 180 degrees. The driver side rear end struck a tree. The reporting trooper observed that the road was dry and traffic was light. There were no adverse road conditions. Id.

25. An autopsy revealed that Mr. Stamp died from multiple injuries due to blunt force trauma. The back of his right hand had the word "copy" stamped on it. The autopsy report lists acute ethanol intoxication under "other significant findings." Id. at ¶ 11, Exhibit D, at p. 133-138.

26. A forensic toxicology report indicates that Mr. Stamp's postmortem heart blood alcohol level was 0.265 %. Id. at ¶ 12, Exhibit D, at p. 139.

27. The death certificate lists "multiple injuries due to blunt force trauma" as the cause of death. It also lists acute ethanol intoxication under "Other significant conditions." In describing how the injury occurred, the death certificate states" "Restrained driver in motor vehicle (car) / fixed object (tree) collision." It states that Mr. Stamp was pronounced dead at 12:03 a.m. on August 3, 2002. Id. at ¶ 13, Exhibit D, at pp. 133-139.

**Ms. Stamp's Claim for Benefits to MetLife**

28. On August 20, 2002 Karen Stamp submitted a claim for Basic, Voluntary and Occupational AD&D benefits under the Plan. Garrison Aff., ¶ 14.

29. By letter dated September 11, 2002 MetLife confirmed receipt of Ms. Stamp's claim and requested copies of police, toxicology and autopsy reports. Id. Exhibit D, p.148.

30. MetLife reviewed Ms. Stamp's claims for Basic and Voluntary AD&D benefits only. As part of its review, MetLife's Group Claims Division on January 3, 2003 asked MetLife's Medical Department whether "the amount of alcohol [found in Mr. Stamp] could impair someone's ability to drive. . ." On January 9, 2003 MetLife's Medical Department responded: "Yes, the level shown would cause delirium intoxication. In a sporadic drinker it would cause lethargy, stupor, combativeness, incoherency and vomiting. In a chronic drinker there would be mild emotional changes and motor changes." The Medical Department noted that "the level listed in the Toxicology Report is considerably higher than that permitted by the State of Rhode Island." Id. at ¶ 16, Exhibit D, p. 119.

31. By letter dated March 26, 2003 MetLife denied Ms. Stamp's claim for Basic and Voluntary AD&D benefits based on the self-inflicted injury exclusion in the Plan and because the act of driving while impaired by alcohol rendered the infliction of serious injury or death reasonably foreseeable and not accidental as required under the terms of the Plan. Garrison Aff. ¶ 16; Presite Aff., ¶ 16, Exhibit D, p. at p. 61.

32. On August 16, 2004, Ms. Stamp submitted her appeal of MetLife's denial to Mobil. MetLife had no involvement in the administration of Ms. Stamp's claim for Occupational AD&D benefits and no further involvement in the administration of Ms. Stamp's claim for Basic and Voluntary AD&D benefits. Garrison Aff., ¶ 16, Presite Aff., ¶¶ 18, 19.

**Mobil's Review of Ms. Stamp's Claim**

33. Mobil reviewed Ms. Stamp's appeal of MetLife's denial of the Basic and Voluntary AD&D benefits. It also reviewed her claim for Occupational AD&D benefits. Garrison Aff., ¶ 17.

34. In reviewing the appeal, Mobil accepted plaintiff's version of all of the facts relating to the meeting that Mr. Stamp attended at Westbrook, Connecticut, as well as his condition upon leaving the meeting. Id. ¶ 18.

35. By letter to Ms. Stamp dated October 14, 2004, Mobil denied Ms. Stamp's appeal of MetLife's denial of the Basic and Voluntary AD&D on the bases that Mr. Stamp's death was not an "accident" within the meaning of the policies and that Mr. Stamp's action of "intentionally consuming an excessive amount of alcohol" fell within the Plan's exclusion of death caused by "intentionally self-inflicted injury." The Voluntary AD&D was additionally denied on the basis that Mr. Stamp committed a crime by driving while under the influence of alcohol, thereby falling within the Voluntary AD&D's exclusion for death caused by committing a serious crime. Id. at ¶ 19, Exhibit I at p. 3.

36. In the October 14, 2004 letter, Mobil also denied Ms. Stamp's claim for Occupational AD&D. The decision was based on the conclusion that Mr. Stamp's death was neither an "accident" nor an "occupational accident" within the meaning of the policy. Although the policy covers any accident which occurs "while at work," defined in part as "[t]raveling to or from . . . a Mobil function . . . as a representative of management of Mobil," Mobil noted that Mr. Stamp was no longer "traveling from" the work-related business meeting in Westbrook "when he stop[ed] . . . for several hours for a separate, purely personal purpose." Mobil added that the phrase "while at work" also includes accidents which occur during a business trip but

does not include "personal time taken before, during or following an approved business trip." Mobil stated that even were the Westbrook meeting considered a "business trip," the collision occurred during "personal time taken . . . following" that trip. Finally, Mobil noted that the Occupational AD&D was subject to the same exclusions at the Voluntary AD&D, namely the intentional self-inflicted injury and the serious crime exclusions. Id. at ¶ 19, Exhibit I at pp. 3-4.

37. On November 23, 2004 Ms. Stamp commenced this action asserting breach of contract and "fiduciary responsibilities" related to the defendants' denial of AD&D, Voluntary AD&D and Occupational AD&D benefits. Presite Aff. ¶ 20.

Neal McNamara, Esq., #4249
Holland & Knight LLP
Attorneys For Defendant Exxon Mobil Corporation, et al.
One Financial Plaza
Providence, RI 02903
(401) 751-8500
(401) 553-6850 [FAX]
neal.mcnamara@hklaw.com

Brooks R. Magratten, Esq., #3585
Catherine A. Shaghalian, Esq. #6883
VETTER & WHITE
Attorneys for Defendant Metropolitan Life Insurance Company of America
20 Washington Place
Providence, RI 02903
(401) 421-3060
(401) 272-6803 [FAX]
bmagratten@vetterandwhite.com

Dated: January 30, 2006

CERTIFICATE OF SERVICE

TO:

Fred L. Mason, Jr., Esq.
Mason Associates, P.C.
20 Cedar Swamp Road
Smithfield, RI 02917

I hereby certify I caused to be served on the above-named counsel of record a copy of the within Joint Rule 12.1 Statement of Undisputed Facts by mailing first class mail, postage prepaid, on the 30th day of January, 2006.

______________________