UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| KAREN STAMP, Plaintiff | ) | C.A. No. 04-0488/L |
| v. | ) | |
| METROPOLITAN LIFE INSURANCE COMPANY OF AMERICA AND MOBIL OIL CORPORATION, Defendants | ) | |

**DEFENDANTS' OBJECTION TO PLAINTIFF'S**
**CROSS MOTION FOR SUMMARY JUDGMENT**

Defendants Metropolitan Life Insurance Company, Administrator-Benefits, Exxon Mobil Benefit Plan, Exxon Mobil Benefit Plan, Exxon Mobil Corporation, Life Insurance Protection Plan of Mobil Oil Corporation, Life Insurance Plan of Mobil Oil object to plaintiff Karen Stamp's cross motion for summary judgment.

Defendants file herewith a supporting memorandum of law.

Brooks R. Magratten, Esq., #3585
Catherine A. Shaghalian, Esq., #6883
VETTER & WHITE
Attorneys for Defendant Metropolitan
Life Insurance Company
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX
bmagratten@vetterandwhite.com
cshaghalian@vetterandwhite.com

Neal J. McNamara, Esq., #4249
NIXON PEABODY, LLP
Attorneys for Defendant Mobil Oil Corp.
One Citizens Plaza
Providence, Rhode Island 02903
(401) 454-1000
(401) 454-1030 FAX
nmcnamara@nixonpeabody.com

Dated: March , 2006

CERTIFICATE OF SERVICE

To:

Fred L. Mason, Jr., Esq.
Mason Associates, P.C.
20 Cedar Swamp Road
Smithfield, RI 02917

I hereby certify that I served on the above-named counsel of record a copy of the within Defendants' Objection to Plaintiff's Cross Motion for Summary Judgment by mailing first class mail, postage prepaid, on the 20th day of March, 2006.

Lisa A. Lariviere

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| KAREN STAMP,<br>Plaintiff<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY OF AMERICA AND MOBIL OIL CORPORATION, et al,<br>Defendants | ) | C.A. No. 04-0488/L |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' OBJECTION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

Defendants Metropolitan Life Insurance Company ("Metlife"), Administrator-Benefits, Exxon Mobil Benefit Plan, Exxon Mobil Benefit Plan, Exxon Mobil Corporation, Life Insurance Protection Plan of Mobil Oil Corporation, Life Insurance Plan of Mobil Oil (collectively "Mobil") hereby object to plaintiff Karen Stamp's cross motion for summary judgment and reply to plaintiff's objection to defendants' joint motion for summary judgment.

## I. The Material Facts Are Not In Dispute

Ms. Stamp did not submit a statement of undisputed facts in support of her cross motion for summary judgment pursuant to Local Rule 12.1. Rather, she included a series of unnumbered factual allegations in her memorandum of law, making it difficult for defendants to respond appropriately. She does not disagree, however, with defendants' statement of undisputed facts. Defendants dispute Ms. Stamp's "Statement of Facts" to the extent that it cites facts beyond the scope of the administrative record, which should not be considered by the Court. Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 519 (1st Cir. 2005).

## II. ERISA Preempts Ms. Stamp's State and Common Law Claims

Plaintiff, in her cross motion for summary judgment, does not dispute that this matter is entirely ERISA preempted.

## III. The Arbitrary and Capricious Standard of Review Controls

Ms. Stamp urges the Court to apply a de novo standard of review to Mobil's and presumably Metlife's decisions to deny her Accidental Death and Dismemberment ("AD&D") benefits. According to Ms. Stamp, the Metlife policies funding benefits under the Plan are "experience-rated" contracts, and, consequently, premium costs incurred by Mobil are affected by the number and size of claims presented. Ms. Stamp implies that Mobil operated under a conflict of interest because its premiums might have increased if it had paid her AD&D benefits.

Ms. Stamp cites the First Circuit's decision in Wright v. R.R. Donnelly & Sons Co., 402 F.3d 67 (1st Cir. 2005), for the proposition that a court may apply a less deferential standard of review where the plan administrator must pay benefits out of its own pocket and acts under a conflict of interest. The Wright decision, however, explains: "Under the law of this Circuit, "[t]he fact that the plan administrator will have to pay [the plaintiff's] claim out of its own assets does not change [the arbitrary and capricious] standard of review." Wright, 402 F.3d at 75.

Because Metlife policies fund benefits under the Plan, Mobil would not have paid any AD&D benefits to Ms. Stamp out of its own pocket. Ms. Stamp suggests that if Mobil awards her benefits, it may ultimately incur higher premiums. Such an increase in premiums -- if premiums were in fact to increase -- would have only a negligible impact, if any, on Mobil's bottom line and would be insufficient as a matter of law to alter the standard of review governing its decisions. Wright, 402 F.3d at 75; Leahy v. Raytheon Co., 315 F.3d 11, 15-17 (1st Cir. 2002);

Doe v. Travelers Ins. Co., 167 F.3d 53, 57 (1st Cir. 1999); Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181 (1st Cir. 1998).

## IV. Ms. Stamp's Assertion that Her Husband's Death Was Accidental and Not Self-Inflicted Is Contrary to the Weight of Authority and the Evidence

Ms. Stamp cannot prevail in her argument that her husband's death was an accident given that a majority of federal courts, including this Court, have held that death caused by driving while grossly intoxicated cannot be deemed accidental. Ms. Stamp relies on cases which are factually dissimilar, interpret state law, or are of no precedential value to this Court.

Ms. Stamp wrongly argues that her husband's death can be deemed accidental under Wickman v. Northwestern National Ins. Co., 103 F. Supp. 2d 486 (1st Cir. 1990). Wickman established a "subjective/objective" test to be used in determining what constitutes an accidental death within the meaning of an AD&D policy. First, the reasonable expectations of the insured must be considered. Id. at 1088. If the insured did not expect an injury similar to that suffered, the fact-finder must then ask whether the insured's expectation was reasonable. Id. If the fact-finder cannot determine the insured's subjective expectation, the fact-finder must then ask "whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct." Id.

Ms. Stamp contends that Mr. Stamp had no subjective expectation of death or injury and that a reasonable person would not view his death as highly likely or substantially certain to occur. However, this contention is not supported by the evidence.[1] Mr. Stamp's

[1] Ms. Stamp refers to an email from Douglas Garrison to Douglas Davies, counsel to Doug Garrison in his capacity as plan administrator, in which Garrison states "it's not clear that a drunk driver even at the .24% BAC level is 'highly likely' or 'substantially certain' to die." Affidavit of Douglas Garrison, Exhibit B thereto. This comment was part of an ExxonMobil internal discussion about how to interpret the term "accident" under the Plan. Rather

blood alcohol level ("BAL") at the time of his death was .265. Statement of Undisputed Facts ("SUF"), ¶26. He had the word "copy" stamped on his hand, suggesting that he stopped somewhere for drinks on his way to Rhode Island. SUF, ¶25. The death certificate and autopsy report note acute ethanol intoxication under "Other Significant Conditions." Id. at ¶¶25, 27. Mr. Stamp was grossly intoxicated when his car veered off the highway.

In advancing her argument, Ms. Stamp understandably ignores this Court's application of Wickman to almost the same set of facts in Mullaney v. Aetna U.S. Healthcare, 103 F. Supp. 2d 486, 494 (D.R.I. 2000). This Court found there that the act of driving while intoxicated "clearly fails the Wickman test" and cannot be deemed an accident. Mullaney at 494. "A reasonable person would know that driving while grossly intoxicated is likely to result in serious bodily harm or death." Id. A majority of federal courts have reached the same conclusion. See, e.g., Cozzie v. Metropolitan Life Ins. Co., 140 F.3d 1104, 1111 (7th Cir. 1998); Poeppel v. The Hartford Life Ins. Co., 273 F. Supp. 2d 714, 720 (D.S.C. 2003); Sorrells v. Sun Life Assur. Co. of Canada, 85 F. Supp. 2d 1221, 1233-34 (S.D.Ala. 2000); Schultz v. Metropolitan Life Ins. Co., 994 F. Supp. 1419, 1421 (M.D. Fla. 1998). Walker v. Metropolitan Life Ins. Co., 24 F. Supp. 2d 775, 781 (E.D. Mich., 1997); Nelson v. Sun Life Assurance Co. of Canada, 962 F. Supp. 1010, 1012 (W.D. Mich. 1997); Cates v. Metropolitan Life Ins. Co., 14 F. Supp. 2d 1024, 1027 (E.D. Tenn. 1996), aff'd, 149 F.3d 1182 (6th Cir. 1998).[2]

Rather than tackling Mullaney, Ms. Stamp relies on decisions out of the Eighth Circuit that hold that death resulting from driving while intoxicated is accidental. See King v. Hartford Life and Accident Ins. Co., 357 F.3d 840 (8th Cir. 2004); West v. Aetna Life Ins. Co., 171 F. Supp. 2d 856 (N.D. Iowa 2001). Unfortunately for Ms. Stamp, these decisions not only

---

than undermine ExxonMobil's ultimate conclusion that Mr. Stamp's death was not accidental, it simply shows that ExxonMobil considered different opinions during its review of Ms. Stamp's appeal.

[2] These cases all involve AD&D policies that do not exclude death or injury caused by intoxication.

express a minority view, they are no longer good law. The Eighth Circuit has vacated King and, after rehearing en banc, remanded the case back to the plan administrator for reevaluation. King v. Hartford Life and Accident Ins. Co., 414 F.3d 994 (8th Cir. 2005). Consequently, West's precedential value is non-existent. McElyea v. AIG Life Ins. Co., 326 F. Supp. 2d 960, 967 (E.D. Ark. 2004).

The state court decisions cited by Ms. Stamp are inapposite as it is well settled that the benefit provisions of an ERISA regulated employee welfare benefit plan must be interpreted under principles of federal substantive law. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56 (1987); Mullaney, 103 F. Supp. 2d at 492.

Ms. Stamp also argues that the fact that the police report identified Mr. Stamp's death as "accidental" is somehow meaningful in the context of interpreting an ERISA plan. It is not. The police officer's determination that Mr. Stamp's death was accidental does not mean that Mr. Stamp's accident fit within the Plan's definition of accident. Indeed, the plaintiff in Mullaney argued that her husband's death was an accident because the medical examiner had deemed it so in his report. Mullaney, 103 F. Supp. 2d at 491. This Court quickly dispensed with that argument, noting that the medical examiner only had four categories to choose from: "accident," "suicide," "homicide" and "undetected," and that "accident" was the only category "even remotely applicable to Mr. Mullaney's death." Id. Thus, the medical examiner's determination of "accident" did not mean that "Mr. Mullaney's 'accident' was of the sort contemplated by defendant or described in the Plan." Id. Similarly, the fact that the police report deems Mr. Stamp's collision "accidental" is of no bearing whatsoever here.

Finally, Ms. Stamp resorts to cases involving autoerotic asphyxiation and drug overdose to show that Mr. Stamp's death does not fall within the policy exclusions for

intentionally self-inflicted injury. Plaintiff's reliance on these cases ignores the significant factual distinctions between autoerotic asphyxiation and drunk driving. Moreover, as with drunk driving, Ms. Stamp is forced to rely on a case espousing a distinctly minority position, Padfield v. AIG Life Ins. Co. of America, 290 F.3d 1121 (9th Cir. 2002). The Padfield court opined that "voluntary risky acts resulting in injury are not necessarily acts that result in intentionally self-inflicted injury." 290 F.3d at 1129. The overwhelming majority of federal courts disagree with the Ninth Circuit, finding that the partial strangulation involved in autoerotic asphyxiation comes within the plain meaning of intentionally self-inflicted injury. See, e.g., Bryant v. AIG Life Ins. Co., 2002 U.S. Dist. LEXIS 23289, *16 (S.D.Mich. 2002); see also Hamilton v. AIG Life Ins. Co., 182 F. Supp. 2d 39, 49 (D.D.C. 2002).[3]

Other cases relied on by plaintiff are distinguishable. In Todd v. AIG Life Ins. Co., 47 F.3d 1448 (5th Cir. 1995), the Fifth Circuit held death by autoerotic asphyxiation was covered as an accidental death. However, the Court noted that the policy in question did not contain an adequate self-inflicted injury exclusion, and that recovery would have been denied had such an exclusion been present. Todd, 47 F.3d at 1454 n.6. The Court in Santaella v. Metropolitan Life Ins. Co., 123 F.3d 456 (7th Cir. 1997), held that a fatal drug overdose was an accident. The Court found that the decedent had no reason to believe that ingesting prescription pills would cause death. She was taking the prescription pills for a medical condition. The amount of the drug in her body at the time of death was three times *less than* what would

[3] Moreover, the Ninth Circuit misapplies Wickman in Padfield. In Wickman the First Circuit affirmed the reasoning and conclusion of the district court. The district court found that the decedent in Wickman "knew or should have known that serious bodily injury or death was a probable consequence substantially likely to occur …." 1989 WL 129240, *6 (D. Mass. 1989). This is the very test the First Circuit adopted when it reviewed Wickman on appeal. In creating this test, the district court cited Sigler v. Mutual Benefit Life Ins. Co., 663 F.2d 49 (8th Cir. 1981), which expressly held that autoerotic asphyxiation was a self-inflicted injury. Despite the Padfield Court's purported reliance on Wickman, it is clear that the First and Ninth Circuits could hardly disagree more.

normally be considered a lethal dose. The decedent's family offered no reason for her to commit suicide, and there was unrebutted testimony by the medical officer that the decedent was the type of person who would take a lethal overdose of a prescription drug in an accidental manner.

Santaella is factually distinguishable from the instant case. Mr. Stamp's consumption of alcohol was voluntary, and the amount of alcohol in his blood at the time of his death was three times the Rhode Island legal limit. Metlife's medical department concluded that Mr. Stamp's BAL of .265 would cause delirium intoxication. SUF, ¶30. In a sporadic drinker it would cause lethargy, stupor, combativeness, incoherency and vomiting. Id. In a chronic drinker there would be mild emotional changes and motor changes. Id. Given Mr. Stamp's state of intoxication, he had every reason to believe that driving a motor vehicle in that state would cause serious injury or death.

Thus, plaintiff has failed to call into question the rationale for the defendants' determination that Mr. Stamp's death was not accidental under the terms of the Plan. The majority of courts, including this Court, have concluded that death from drunk driving -- as opposed to autoerotic asphyxiation or drug overdose – falls within an AD&D policy's self-inflicted injury exclusion. See, e.g., Cozzie, 140 F.3d at 1111; Mullaney 103 F. Supp. 2d at 495; Nelson, 962 F. Supp. at 1013. This Court opined that "any injuries or death resulting from driving while intoxicated can be classified as 'intentionally self-inflicted.'" Mullaney at 495.

## V. The Fact that the Policies Do Not Exclude Injury or Death Caused by Intoxication Is Not Determinative

Ms. Stamp argues that she should be awarded AD&D benefits because Metlife failed to specifically exclude injury or death resulting from intoxication in its AD&D policies. This argument ignores all of the decisions cited in Part III, supra, that find that death from

driving while intoxicated can bar recovery under an AD&D policy even when intoxication is not specifically excluded. Moreover, the "failure to exclude an act from coverage does not automatically mean that the act is covered by the policy." Id. at 495. An ERISA plan cannot and need not address every possible detail or contingency in order to be deemed unambiguous. See Harris v. Harvard Pilgrim Healthcare, Inc., 208 F.3d 274, 277 (1st Cir. 2000) ("plan provisions need not explicitly rule out every possible contingency in order to be deemed unambiguous"). Rather, "ERISA merely requires that covered plans be sufficiently accurate and comprehensive to reasonably apprise such average plan participants and beneficiaries of their rights and obligations under the Plan." Id. (quotation, citation and alteration omitted). Therefore, plaintiff's argument must fail.

## VI. Defendants' Conclusion that Intoxication Caused Mr. Stamp's Death Is Reasonable and Supported by the Evidence

The evidence in the claim file leads to only one reasonable inference – that Mr. Stamp's severe intoxication caused his fatal collision. Ms. Stamp speculates that Mr. Stamp may have veered off the road while trying to avoid another vehicle or animal. She suggests that Mr. Stamp may have fallen asleep behind the wheel. There is no evidence, however, of any other damaged vehicle or injured animal or pedestrian at the scene to explain why Mr. Stamp lost control of his vehicle. There were no adverse weather or road conditions.

There is evidence that Mr. Stamp was grossly intoxicated when he veered off the road. His BAL was .265, three times the Rhode Island legal limit. According to Metlife's medical department, this level of intoxication in a sporadic drinker would cause lethargy, stupor, combativeness, incoherency and vomiting. SUF, ¶ 30. Mr. Stamp had the word copy stamped on his hand, suggesting that he stopped somewhere for drinks on his way to Rhode Island. The

death certificate and autopsy report cite acute ethanol intoxication under "Other Significant Conditions."

These facts create a more than reasonable inference that Mr. Stamp's intoxication caused his death. A majority of federal courts have made the same inference where the decedent is intoxicated but the precise mechanism of death is unknown. See, e.g., Cozzie, 140 F.3d at 1111; Poeppel, 273 F. Supp. 2d at 720; Sorrells, 85 F. Supp. 2d at 1233-34; Schultz, 994 F. Supp. at 1421; Walker, 24 F. Supp. 2d at 781; Nelson, 962 F. Supp. at 1012; Cates, 14 F. Supp. 2d at 1027.

### VII. Plaintiff Has Abandoned Her Claim for Benefits Under the Occupational AD&D Policy.

Plaintiff initially made a claim for benefits under Basic AD&D, Voluntary AD&D and Occupational AD&D policies. Her entire argument here has focused on the issue of whether her husband's death was "accidental" under the Plan. To be eligible for Occupational AD&D benefits, the decedent's injury must not only be accidental but death must have occurred as a result of an injury incurred "while at work." Defendants argued in support of their motion that Mr. Stamp's death was not the result of an injury that occurred "while at work." Plaintiff has completely failed to respond to that argument and so has abandoned her claim for Occupational AD&D benefits.

## CONCLUSION

For the foregoing reasons, defendants request that the Court deny plaintiff's cross motion for summary judgment and grant defendants' motion for summary judgment dismissing all of plaintiff's claims.

Brooks R. Magratten, Esq., #3585
Catherine A. Shaghalian, Esq., #6883
VETTER & WHITE
Attorneys for Defendant Metropolitan Life Insurance Company
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX
bmagratten@vetterandwhite.com
cshaghalian@vetterandwhite.com

Neal J. McNamara, Esq., #4249
NIXON PEABODY, LLP
Attorneys for Defendant Mobil Oil Corp.
One Citizens Plaza
Providence, Rhode Island 02903
(401) 454-1000
(401) 454-1030 FAX
nmcnamara@nixonpeabody.com

Dated: March 20 , 2006

CERTIFICATE OF SERVICE

To:

Fred L. Mason, Jr., Esq.
Mason Associates, P.C.
20 Cedar Swamp Road
Smithfield, RI 02917

I hereby certify that I served on the above-named counsel of record a copy of the within Memorandum in Support of Defendants' Objection to Plaintiff's Cross Motion for Summary Judgment by mailing first class mail, postage prepaid, on the 20th day of March, 2006.

Lisa A. Lariviere