**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**KAREN STAMP** :
**Plaintiff** :
:
**v.** : **Civil Action: 04-488L**
:
**METROPOLITAN LIFE INSURANCE** :
**COMPANY OF AMERICA AND MOBIL** :
**OIL CORPORATION** :

**STATEMENT OF UNDISPUTED FACTS**

1. On or about August 2 and/or August 3, 2002, the late Stephen Stamp was employed by Exxon Mobil Chemical Company in Stratford, Connecticut, as Maintenance Manager. Stephen Stamp began his employment with Exxon Mobil Chemical Company in Stratford, Connecticut in May, 2002. His position as Maintenance Manager for Exxon Mobil Chemical Company in Stratford, Connecticut was supervisory in nature and was considered a management position. Prior to Friday, August 2, 2002, Stephen Stamp and Mrs. Stamp discussed a mandatory meeting of certain Exxon Mobil Chemical Company employees, including Stephen Stamp, which was to take place in Westbrook, Connecticut. A copy of the document provided to Stephen Stamp by Exxon Mobil Chemical Company concerning the "Stratford 2002 Exempt Meeting" of August 2, 2002 is attached to Exhibit B. (Defendants' Motion for Summary Judgment Exhibit B, Affidavit of Douglas Garrison, Exhibit E Affidavit of Karen Stamp submitted to Exxon Mobil).

2. A copy of Stephen Stamp's office day planner concerning directions to the mandatory meeting in Westbrook, Connecticut from his home in Litchfield, Connecticut, . (Defendants' Motion for Summary Judgment Exhibit B, Affidavit of Douglas Garrison, Claims File of MetLife).

3. A copy of a computer printout printed by Stephen Stamp concerning directions to the mandatory meeting in Westbrook, Connecticut from his home in Litchfield, Connecticut was also attached as Defendants' Motion for Summary Judgment Exhibit B, Affidavit of Douglas Garrison, Claims File of MetLife.

4. During the course of discussions concerning this mandatory meeting which was to take place on Friday, August 2, 2002 in Westbrook, Connecticut, Stephen indicated to Mrs. Stamp that he "didn't want to go" to the meeting, especially since it was so geographically distant from his home in Litchfield Connecticut. (Defendants' Motion for Summary Judgment Exhibit B, Affidavit of Douglas Garrison, Exhibit E Affidavit of Karen Stamp submitted to Exxon Mobil).

5. However as a management representative of Exxon Mobil Chemical Company, it was required that Stephen Stamp attend the entire mandatory meeting in Westbrook, Connecticut, since he had only become recently employed as a management representative for Exxon Mobil Chemical Company, and top management personnel were going to attend thc mandatory meeting. A copy of the "Organizational Structure" of Exxon Mobil Chemical Company concerning Stephen and other employees in Stratford, Connecticut, was attached to Defendants' Motion for Summary Judgment Exhibit B, Affidavit of Douglas Garrison, Exhibit E Affidavit of Karen Stamp submitted to Exxon Mobil.

6. Prior to August 2, 2002, Mr. and Mrs. Stamp previously made plans that he would stay at his parents' home in his hometown of Johnston, Rhode Island that evening since they were to attend a family gathering on Saturday, August 3, 2002, for his brother's 40th birthday. This was an additional reason that Mr. Stamp preferred not to attend the mandatory meeting which was to take place on Friday, August 2, 2002 in Westbrook, Connecticut. (Defendants' Motion for Summary Judgment Exhibit B, Affidavit of Douglas Garrison, Exhibit E Affidavit of Karen Stamp submitted to Exxon Mobil).

7. Steven Stamp also indicated that he preferred not to attend this mandatory meeting since it would have been preferable to drive from his home in Litchfield, Connecticut to Johnston, Rhode Island on the afternoon of Friday, August 2, 2002. However, since the meeting in Westbrook, Connecticut was mandatory, Mr. and Mrs. Stamp made plans that Mr. Stamp would drive directly from the meeting in Westbrook, Connecticut at the completion of the meeting on the evening of Friday, August 2, 2002. Mr. and Mrs. Stamp made this plan as it was easier and more convenient both from a time and geographical standpoint that Mr. Stamp drive directly from the meeting in Westbrook Connecticut late that evening to Johnston, Rhode Island, as opposed to returning to their home in Litchfield Connecticut. (Defendants' Motion for Summary Judgment Exhibit B, Affidavit of Douglas Garrison, Exhibit E Affidavit of Karen Stamp submitted to Exxon Mobil).

8. According to these plans, Mrs. Stamp was to drive directly from their home in Litchfield Connecticut with their daughter to meet Mr. Stamp at his parents' home in Johnston, Rhode Island on the morning of Saturday, August 3, 2002. Stephen Stamp left his home in Litchfield, Connecticut at 6:00 a.m. on the morning of Friday, August 2, 2002.

9. This was as Mr. Stamp anticipated a lengthy drive to the mandatory meeting in Westbrook, Connecticut which started at about 7:45 a.m. This was as Exxon Mobil Chemical Company did not provide transportation to its employees from the Stratford, Connecticut facility to the meeting in Westbrook, Connecticut. Mr. Stamp telephoned Mrs. Stamp at home at approximately 5:20 P.M. on Friday, August 2, 2002, at which time they discussed the events of the meeting in Westbrook, Connecticut. Mr. Stamp sounded in good spirits, and indicated that he had had a "good day" during the day-long meeting. He said that the weather had been "great", and that he enjoyed the boat cruise, during which Exxon Mobil Chemical Company provided lunch and beer to its employees. (Defendants' Motion for Summary Judgment Exhibit B, Affidavit of Douglas Garrison, Exhibit E Affidavit of Karen Stamp submitted to Exxon Mobil).

10. Mr. Stamp also indicated that he was in the process of changing his clothes to attend the business dinner, at which management and supervisory personnel were expected to attend, at a hotel across the street from where the boat had docked. Mr. and Mrs. Stamp also confirmed their previous plans that he would stay at his parents' home in his hometown of Johnston, Rhode Island that evening since they were to attend a family gathering on Saturday, August 3, 2002, for his brother's 40th birthday. At no time during his telephone discussion with his wife on Friday, August 2, 2002 did Stephen

Stamp appear impaired; to the contrary, he sounded in good spirits, and indicated that he had had a "good day" during the day-long meeting. (Defendants' Motion for Summary Judgment Exhibit B, Affidavit of Douglas Garrison, Exhibit E Affidavit of Karen Stamp submitted to Exxon Mobil).

11. Although Mrs. Stamp did not speak with Mr. Stamp after that telephone discussion, a review of his Exxon Mobil Chemical Company cellular telephone records, which is attached to Exhibit B, reveals that Mr. Stamp made several telephone calls to friends in Rhode Island after the meeting of Friday, August 2, 2002 ended between 8:30 and 9:00 P.M. It is also her understanding that Mr. Stamp spoke with his friend, Joe Kingsley, at about 9:30 P.M. for about 10 minutes, at which time he apparently discussed meeting Mr. Kingsley on his way to his parents' home in Johnston, Rhode Island. Mr. Stamp sounded in good spirits and did not seem impaired in his telephone conversation with Joe Kingsley. (Defendants' Motion for Summary Judgment Exhibit B, Affidavit of Douglas Garrison, Exhibit E Affidavits of Karen Stamp and Exhibit G Affidavit of Joseph Kingsley submitted to Exxon Mobil).

12. As to the events of August 2, 2002, a review of the "Organizational Structure" of Exxon Mobil Chemical Company concerning Mr. Stamp and other employees in Stratford, Connecticut reveals that the majority attending this company sponsored event of August 2, 2002 were either management or supervisory personnel of Exxon Mobil Chemical Company. Additionally, a review of the "Organizational Structure" of Exxon Mobil Chemical Company confirms that those who attended the business dinner on the evening of August 2, 2002 were either management or supervisory personnel of Exxon Mobil Chemical Company. For example, Mr. Stamp apparently sat

with Robert Migliorini, his immediate supervisor and Plant Manager, Gerry Smerka, Operations Manager, Dave Liestman, Technical Manager, B.J. Welch, Training Supervisor, and Rick Turner, EIT Coordinator. (Defendants' Motion for Summary Judgment Exhibit B, Affidavit of Douglas Garrison, Exhibit E Affidavit of Karen Stamp submitted to Exxon Mobil. Organizational Structure" of Exxon Mobil Chemical Company").

13. According to Joseph Kingsley, Mr. Stamp telephoned him at his home at approximately 9:20 P.M. on August 2, 2002 while Mr. Stamp was traveling by car from his Exxon Mobil business meeting in Connecticut. At that time, Mr. Stamp was "in great spirits", and he indicated that he wanted to stop by Mr. Kingsley's home so that they could watch a movie that Mr. Kingsley had recently purchased. At that time, Mr. Kingsley was ready to go to bed early since he had to wake up early the next morning at 6:00 A.M. to go to work. (Defendants' Motion for Summary Judgment Exhibit B, Affidavit of Douglas Garrison, Exhibit G Affidavit of Joseph Kingsley submitted to Exxon Mobil).

14. Mr. Stamp, who was in a good mood, tried to persuade Mr. Kingsley to stay up until he arrived so that they could watch a movie together that Mr. Kingsley had recently purchased. At that time, Mr. Stamp did not indicate specifically where he was, other than advising that he was driving back from a daylong business meeting in the course of his employment with Mobil in Connecticut. Although Mr. Stamp continued to try to persuade Mr. Kingsley to stay up until he arrived, Mr. Kingsley could not stay up since he had to go to bed in order to go to work early the next morning. Mr. Kingsley and Mr. Stamp changed topics as to what Mr. Stamp had done earlier that day. Mr.

Stamp advised that he had spent the entire day at a Mobil business meeting in Connecticut, and had been on "the Mobil yacht". They then began joking about the disparity between their respective jobs. Mr. Kingsley pointed out that Mr. Stamp had just begun working at Mobil at a "very good job", and had spent the day at a business meeting in Connecticut, part of which involved him being on the "the Mobil yacht", and at which he was making a lot of money, while Mr. Kingsley was not making as much money in his job at a group home working with troubled children. The joking between the two, which was good-natured, went on for quite some time. (Defendants' Motion for Summary Judgment Exhibit B, Affidavit of Douglas Garrison, Exhibit G Affidavit of Joseph Kingsley submitted to Exxon Mobil).

15. They also talked about Mr. Stamp attending a family gathering in Rhode Island the next day, and Mr. Kingsley remember this since he was looking forward to attending the family gathering since he had not seen his parents for some time. Mr. Stamp also indicated that he and his wife, Karen, had made plans concerning the family gathering in Rhode Island the following day; that is, Mr. Stamp was driving directly from his Mobil business meeting from Connecticut to Rhode Island to stay at his parent's home, because it was a shorter drive than returning to his Connecticut home from the meeting, and then driving to Rhode Island. Mr. Stamp also indicated that he and his wife agreed that his wife and daughter would drive from Connecticut to Rhode Island the following morning to meet him at the family gathering. (Defendants' Motion for Summary Judgment Exhibit B, Affidavit of Douglas Garrison, Exhibit G Affidavit of Joseph Kingsley submitted to Exxon Mobil).

16. During their entire telephone conversation, Mr. Stamp was in a positive, optimistic mood, and did not seen impaired or intoxicated. Mr. Stamp spoke clearly, did not slur his words, and his thoughts were clear and coherent. Since Mr. Kingsley was a longtime good friend of Mr. Stamp, he would have recognized if he was either impaired, under the influence of alcohol, drunk or intoxicated at the time of this telephone conversation. At no time did Mr. Stamp seen impaired or under the influence of alcohol during the entirety of the telephone conversation of August 2, 2002. (Defendants' Motion for Summary Judgment Exhibit B, Affidavit of Douglas Garrison, Exhibit G Affidavit of Joseph Kingsley submitted to Exxon Mobil).

17. Prior to August 2002, Mr. Stamp and Mr. Kingsley had numerous discussions concerning financial planning. In the months prior to August, 2002, they had a number of discussions during which Mr. Stamp indicated that, since he had a wife and child, he wanted to make sure that they would be "taken care of if anything happened to him" and that he had taken out more than sufficient insurance to "take care" of his wife and daughter if "anything happened to him".(Defendants' Motion for Summary Judgment Exhibit B, Affidavit of Douglas Garrison, Exhibit G Affidavit of Joseph Kingsley submitted to Exxon Mobil).

18. Mr. Kingsley learned of Mr. Stamp's automobile accident early in the morning on August 3, 2002, when he received a telephone call from a family member advising me of the automobile accident. At that time, he was shocked, primarily due to his telephone call with Mr. Stamp the night before, during which Mr. Stamp was coherent and in a very positive, optimistic mood, expressing how fortunate he was to have found his new job at Mobil, and how much he enjoyed his job, and how much he looked

forward to attending his family gathering the following day in Rhode Island. (Defendants' Motion for Summary Judgment Exhibit B, Affidavit of Douglas Garrison, Exhibit G Affidavit of Joseph Kingsley submitted to Exxon Mobil).

19. The information provided by Exxon Mobil Chemical Company in its correspondence of March 11, 2004 as to the events of August 2, 2002 is mostly consistent with the facts set forth by Mrs. Stamp and also that of Mr. Kingsley. Exxon Mobil Chemical Company admits that the meeting of August 2, 2002 was mandatory, but claims that the afternoon session and evening activities were "voluntary".

20. Nevertheless, it is interesting to point out that all of the Exxon Mobil Chemical Company employees involved in the afternoon and evening activities were management personnel, including Mr. Stamp. (Defendants' Motion for Summary Judgment Exhibit B, Affidavit of Douglas Garrison, Exhibit E Affidavits of Karen Stamp submitted to Exxon Mobil).

21. Additionally, the e-mail message from Bob Migliorini, the Stratford, Connecticut Plant Manager, setting forth the agenda for the meeting on August 2, 2002, and the attached schedule of events, does not indicate in any way that any of the events were anything but mandatory. (Defendants' Motion for Summary Judgment Exhibit B, Affidavit of Douglas Garrison, Exhibit(s) C and D Responses of Exxon Mobil Chemical Company as to the events of August 2, 2002 submitted to Exxon Mobil).

22. Exxon Mobil Chemical Company's responses also confirm that during the afternoon boat cruise for its employees, Mr. Stamp was in a good mood, and indicated to other management personnel that he was going to Rhode Island the next day and that "his wife and daughter will going to meet him there the next day and he hoped to get together

with one of his friends, who he didn't often see, that night, but wasn't sure whether that would work out". This information is consistent with that provided by Mrs. Stamp and Mr. Kingsley concerning Mr. Stamp's plans for that night and the following morning.

23. As to the business dinner meeting sponsored by Exxon Mobil Chemical Company, it is interesting to note that the employees attending were also that of management status. After dinner, Mr. Stamp sat with "Bob Migliorini, Gerry Smerka, Dave Liestman and Holly Turner". According to the attached "Organizational Structure" of Exxon Mobil Chemical Company, Bob Migliorini was the Exxon Mobil Stratford, Connecticut Plant Manager, and was also Mr. Stamp's immediate supervisor, Gerry Smerka was Operations Manager, Dave Liestman was Technical Manager, and Holly Turner was EIT Coordinator. (Defendants' Motion for Summary Judgment Exhibit B, Affidavit of Douglas Garrison, Exhibit(s) C and D Responses of Exxon Mobil Chemical Company as to the events of August 2, 2002 submitted to Exxon Mobil).

24. Even more important are the observations of Mr. Stamp's Exxon Mobil's co-workers concerning Mr. Stamp's activities and "condition" during the events of August 2002. During the afternoon boat cruise for its employees, Mr. Stamp was in a good mood, and indicated to Terry Haberman, Human Resource Manager, that he was going to Rhode Island the next day and that "his wife and daughter will going to meet him there the next day and he hoped to get together with one of his friends, who he didn't often see, that night, but wasn't sure whether that would work out". (Defendants' Motion for Summary Judgment Exhibit B, Affidavit of Douglas Garrison, Exhibit(s) C and D Responses of Exxon Mobil Chemical Company as to the events of August 2, 2002 submitted to Exxon Mobil).

25. Although Mr. Stamp consumed several drinks during the course of the day at the meeting and at the Exxon Mobil Company dinner, there is absolutely no indication that Mr. Stamp was impaired. To the contrary, in response to the question raised by Exxon Mobil "What was Mr. Stamp's condition when he left?", it is conceded that "BJ (B.J. Welch) and Rick (Rick Turner) say he (Mr. Stamp) showed no signs of impairment Since BJ has worked as a bouncer in a nightclub, his comments seem particularly well-informed. He said Mr. Stamp's speech was normal and his thoughts seemed coherent. He showed no unsteadiness and seemed alert. Rick agrees with this assessment".

26. This information is consistent with that provided by Mrs. Stamp and Mr. Kingsley concerning their impression of Mr. Stamp's condition before and after the Exxon Mobile meeting in Westbrook, Connecticut. (Defendants' Motion for Summary Judgment Exhibit B, Affidavit of Douglas Garrison, Exhibit(s) C and D Responses of Exxon Mobil Chemical Company as to the events of August 2, 2002 submitted to Exxon Mobil).

27. Finally, the Rhode Island State Police investigated the circumstances of the accident which caused Mr. Stamp's unfortunate death. A copy of the applicable police report and investigation, together with an Affidavit from the investigating state police trooper is attached hereto. Although self-explanatory, contrary to the conclusion of Metropolitan Life Insurance Company that Mr. Stamp's death was "not accidental", the investigating officer concluded that as a result of his official investigation, it was determined that the incident was **"accidental"** in nature. (Exhibit A Affidavit of Trooper Scott Carleston)

28. The group policies issued to Mobil Oil Corporation forming the basis of this litigation, including the Life Insurance Plan of Mobil Oil Corporation and the Life Protection Insurance Plan of Mobil Oil Corporation, delivered and governed by the laws of the Employees Retirement Income Security Act ("ERISA"), Group Policy No. 33313 23200 and 27960, provide Basic Life Insurance, Accidental Death & Dismemberment ("AD&D") in the amount of $188,000, Basic Accidental Death & Dismemberment ("BAD&D") in the amount of $426,000, and Occupational Accidental Death & Dismemberment ("OAD&D") in the amount of $171,000 in benefits to employees of Mobil Oil Corporation and their intended beneficiaries including, but not limited to, the plaintiff, Plaintiff, Karen Stamp. (Affidavit of Karen Stamp)

**KAREN STAMP**

By her Attorneys,

Fred L. Mason Jr.

Fred L. Mason Jr. (#4274)
Mason Associates, P.C.
20 Cedar Swamp Road
Smithfield, Rhode Island 02917
(401) 232-2277
(401) 232-7744 Facsimile

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed, postage prepaid, first class mail, to: Neal J. McNamara, Esq. Holland & Knight, LLP One Bank Boston Plaza Providence Rhode Island 02903 and Brooks Magratten Esq. Vetter & White 20 Washington Place Providence Rhode Island 02903 on this th day of April, 2006.

Fred L. Mason Jr.